# REPORTS OF CASES

DETERMINED IN

# .THE SUPREME COURT

OF THE

# STATE OF UTAH.

ARTHUR PRATT, Appellant, *v.* THE BOARD OF
POLICE AND FIRE COMMISSIONERS.

BOARD OF POLICE AND FIRE COMMISSIONERS—REMOVAL OF CHIEF
OF POLICE—MANDAMUS.

1. Plaintiff was appointed chief of police December 31, 1894,
pursuant to section 7 of the act approved March 8, 1894
(Sess. Laws 1894, p. 33), which provides that the chief
of police shall be appointed by the board of commissioners,
and retain his position during good behavior, except in
cases otherwise provided. The act of 1894 was repealed
by the act of 1896 (Sess. Laws 1896, p. 219), and section
7 of the latter act provides that the chief of police shall
retain his position "during good behavior except in cases
herein otherwise provided," the same as the act of 1894.
Section 10 of the act of 1896, however, provides as follows:
"The board hereby created shall have the power and it
shall be their duty at any time for good cause or when the good
of the service shall be subserved thereby, upon the concurrence

of three members thereof, to suspend without pay or dismiss the chief or captain of police." On December 1, 1896, the defendant board dismissed plaintiff from office without preferring or filing any charges against him, and without giving him notice, or an opportunity to be heard in his defense. *Held:* First, That the chief of police holds his office during good behavior, which means for life, unless it be otherwise provided by statute, or unless he becomes guilty of such improper conduct as will justify a removal. Second, That the power of removal is vested in the board of police and fire commissioners, but cannot be exercised at its mere discretion without preferring charges, and affording an opportunity to be heard. Third, That to hold otherwise would be to convert what, under section 7 of the act of 1896, is a life tenure, into a mere tenure at will, and would be in contravention of sections 10, 11 and 17 of the same act, and would enable the board to render section 11 an absolute nullity, and to wholly disregard section 17. Fourth, That, the board having attempted to remove the officer summarily, at its mere pleasure, its action was null and void, and created no vacancy. Fifth, That the plaintiff was entitled to be recognized by the board as the lawful incumbent, and has the right to discharge the duties and receive the emoluments of the office until lawfully removed, or until in some way he ceases to be the rightful incumbent.

2. Where a person has been in the actual and lawful possession of an office, received and enjoyed the emoluments thereof, is entitled to the office *de jure*, and is unlawfully removed, mandamus is the appropriate remedy to restore the *de jure* officer to his office, and it is not necessary to resort to *quo warranto*, even though the office be in the possession of another.

(No. 788.   Decided June 14, 1897.)

Appeal from the Third district court, Salt Lake county. Hon. A. N. Cherry, *Judge.*

*Mandamus* proceeding by Arthur Pratt against the

board of police and fire commissioners. From a judgment for defendant, plaintiff appeals. *Reversed.*

This is an action in *mandamus* to compel the respondents to reinstate the appellant to the office of chief of police of Salt Lake City, on the ground that he has been unlawfully removed therefrom. It is alleged in the affidavit, in substance, that on December 31, 1894, the appellant was appointed to the position of chief of police, to hold the same during good behavior; that he at once qualified, entered upon the duties of the office, and continued to discharge the same without interruption until, on December 7, 1896, the defendant board, three members concurring, dismissed him from office, notified him to surrender control thereof, and excluded him from the management of the department; that at no time were any charges preferred or filed against him, nor any notice of charges given him, nor any opportunity afforded to be heard in his defense; and that, after being notified of his removal, he protested against it to the board, but that the board insisted in arbitrarily dismissing and excluding him from the office, and thereafter refused to recognize him as chief of police. The defendant board filed a demurrer and answer. The demurrer was overruled. In the answer, after making various denials, the board admitted that they dismissed the relator from office, and alleged that they appointed another person in his place, who had since discharged the duties of the office. At the hearing the court refused to hear or consider any evidence under the answer, and found that the appellant was appointed chief of police, as alleged in his affidavit, but adjudged that he was not entitled to the relief sought, and that the board had the power to dismiss him without notice, charges, or hearing.

*Williams, Van Cott & Sutherland,* for appellant.

*William McKay* and *D. B. Hempstead,* for respondent.

The following authorities sustain the contention of the respondent that the removal of the former chief of police, the appellant in this case, was legal. *State* v. *Board of Fire Com.,* 26 Ohio St. 24; *Trimble* v. *People,* 19 Colo. 187; *People* v. *Martin,* 19 Colo. 565; *Keenan* v. *Perry,* 24 Tex. 253; *State* v. *McGarry,* 21 Wis. 502; *Wilcox* v. *People,* 90 Ill. 186; *Stevenson* v. *Higgins,* 15 Ill. 110; *State of Hoboken* v. *Gear,* 27 N. J. Law 255; *People* v. *Whitlock,* 92 N. Y. 101; *State* v. *Doherty,* 13 Am. Rep. 131; *Wright* v. *Defrees,* 8 Ind. 298; *Patten* v. *Vaughen,* 39 Ark. 211; *Trainor* v. *Board of Auditors,* 89 Mich. 162.

If an office is filled *de facto,* the writ of *mandamus* does not lie for the purpose of trying title to the office. *People* v. *Olds,* 3 Cal. 167; *People* v. *Scannel,* 7 Cal. 442; *Turner* v. *Meloney,* 13 Cal. 621; *Satterlee* v. *San Francisco,* 23 Cal. 320; *Williams* v. *Clayton,* 6 Utah 86; *Meredith* v. *Board of Supervisors,* 50 Cal. 433; *Kelly* v. *Edwards,* 69 Cal. 460; *State* v. *Dunn,* 12 Am. Dec. 28 n.; *St. Louis County Court* v. *Sparks,* 45 Am. Dec. 355; *Matter of Gardner,* 68 N. Y. 467, 468, 470; High on Extra. Legal Rem., secs. 49, 50, 77; 14 Enc. of Law 97 n.

BARTCH, J. (after stating the facts):

The first material question which is presented for consideration is whether, under our laws, the board of police and fire commissioners have power to remove from office summarily, without charges, notice, and hearing, the chief of police. The respondent insists that under the Laws of 1896 he may be removed by the board either for cause, after a trial on charges, or by three concurring members thereof, whenever, in their judgment, the good

of the service will be subserved thereby. The appellant was appointed pursuant to section 7 of the act approved March 8, 1894 (Sess. Laws 1894, p. 33), which, among other things, provides: "The chief of police, and chief engineer of the police and fire departments shall be appointed by the board of commissioners hereby created, and retain their positions during good behavior, except in the cases herein otherwise provided." Under this provision the appellant was entitled to hold his office during good behavior, which means for life, except in cases otherwise provided by statute, or unless he becomes guilty of such improper conduct as will justify a removal. That act was repealed by the act approved March 30, 1896 (Sess. Laws 1896, p. 219), and therefore the action of the board in the premises must be considered with reference to the later law, which was in force at the time of the amotion. The several provisions of the law of 1896 material in this case will be considered in the order in which they occur in the act. Section 1 (same as section 1 of the act of 1894) provides for the appointment of a board of police and fire commissioners, consisting of four members, only two of whom can be of the same political party. The design at the outset seems to be to remove, as nearly as may be, the management of the police and fire departments from political influences. Section 7 reads: "The chief and captain of police and chief engineer and assistant engineer of the fire departments shall be appointed by the board of commissioners hereby created, and shall retain their positions during good behavior except in cases herein otherwise provided." It will be noticed that, so far as the appointing power and tenure of office are concerned, this section is a re-enactment of the provision of the former law, above quoted. Here, as there, the tenure is during good behavior, except

in cases where it is otherwise provided, and it remains
to be seen, by reference to other provisions of the act,
how such tenure may be affected.  Section 8 makes it
the duty of the board to supervise the police and fire
departments in accordance with law, and to see that the
officers and members faithfully discharge their duties.
As may be observed, the first provision of the law respect-
ing the power of removal is contained in section 10,
which, on this subject, provides: "The board hereby
created shall have the power and it shall be their duty
at any time for good cause or when the good of the serv-
ice will be subserved thereby, upon the concurrence of
three members thereof, to suspend without pay or dismiss
the chief or captain of police, the chief or assistant engi-
neer, or any subordinate officer, member or employé of
either department." It is insisted for the respondent
that under the clause, "when the good of the service
will be subserved thereby," the board have power sum-
marily to remove any of the officers referred to in the pro-
vision.  If this position be sound, then indeed what,
under section 7, appears to be intended as a life tenure,
becomes merely a tenure at will, for in such event the
board, at its mere pleasure or caprice, arbitrarily, at any
moment, and regardless of the public good, may remove
an officer without cause, notice, or hearing, by simply
stating that the good of the service would be subserved
thereby.  To further strengthen the position here
assumed, it is contended that the portion of section 10
above quoted was intended by the legislature to take
the place of section 14 of the act of 1894, and that it
simply changed the number of members of the board nec-
essary to effect a removal from four to three.  Whether
or not section 14 of that act, when considered with other
provisions of the same act respecting the power of

amotion, conferred such arbitrary power as is here claimed, it is not necessary for us to decide, but it is important to notice that the portion of that section which provides: "In such cases the removal shall be made by a notice to the officer, signed by all the members of the board, and it shall not be necessary to state any cause for such removal,"—has not been re-enacted in the law of 1896. If, in the former law, that provision was significant in conferring such power, then the omission in the later law must be equally significant as showing an intention to withhold such power. Aside from these considerations, however, there are yet other provisions of the act of 1896 which must be considered in determining the soundness of the position of the respondent, and the interpretation which ought to be given to the part of section 10 above referred to.

Section 11 reads: "Any citizen may prefer and file with the board a complaint and charges against the chief of either department, or any officer, member or employé thereof; immediately upon the filing of such charges or of charges preferred by the chief of either department, the board shall suspend such officer or member complained of if he be not already under suspension and if in their judgment the charges warrant suspension, until the matter can be heard and investigated. The person complained of shall be entitled to ten days' notice in writing of the time and place of hearing, together with a copy of the charges. Upon the hearing the accused shall be tried by a full board, if he so desire, and he shall be entitled to be heard in his own defense, but in no case shall counsel be heard either for or against him, unless a majority of the board shall request it;" and then empowers the board to adopt rules governing the procedure at a hearing, to summon witnesses, and compel the pro-

*duction of documentary evidence.* In case of refusal by any person to obey a subpœna or to testify when summoned, the board may refer the matter of such refusal to the district court. This section provides a complete system of procedure for any case where charges are preferred against the chief of police, or any of the officers to which it relates, by a citizen. Section 14 confers authority on the board to fill by appointment any vacancy in the office of chief or captain of police, or chief or assistant engineer of the fire department, "during good behavior, subject to suspension and dismissal as herein provided." It also provides expressly that all subordinate members of the force in either department, at the time when the act takes effect, shall hold their respective positions "at the pleasure of the respective chiefs, or a majority of the board." The remaining section of the act of 1896 material to this decision is the seventeenth, the language of which is as follows: "The chief and captain of police and the chief engineer and assistant engineer of the fire department, each and all of them shall be subject to suspension from office for cause, by vote of three members of the board, at any time. Any officer so suspended shall thereupon cease to exercise the functions of his office until he shall be reinstated. In case of suspension, the board shall at once consider and examine the charges against the officer suspended, giving him an opportunity to be heard in his own defense. After hearing the matter, the board shall determine whether the charges are sustained. If the charges shall not be sustained by the board, the officer shall be immediately reinstated. If the board shall determine that the charges are sustained, it shall at once determine whether the good of the service requires that the suspended officer shall be removed from office or shall be suspended from office

without pay for a fixed period and in all cases a vote of three members of the board shall be sufficient to determine that the charges are sustained and to fix the punishment by removal from office or otherwise. The board shall communicate its decision to the officer charged, in writing, and their decision shall be final and conclusive in all cases." Under this section any of the officers referred to, including the chief of police, is subject to suspension for cause at any time by a vote of three members of the board, and, upon suspension, the officer must cease to exercise his official functions, and the board must "at once consider and examine the charges against the officer suspended, giving him an opportunity to be heard in his own defense." Thus far this section contains provisions respecting suspensions, charges, and hearings similar to those in section 11, and there appears to be no reason why the method of procedure authorized in that section should not apply with equal force to cases instituted under this. The only difference seems to be that under the former section the suspension occurs upon the filing of charges by a citizen, while under the latter it may be made by the board of its own motion, for cause. Then, after the charges have been filed, and the accused has been heard, or has had an opportunity to be heard, it is made the duty of the board, under this section, to determine whether the charges are sustained. This evidently implies an examination and consideration of all the evidence adduced at the hearing, being in its nature a judicial inquiry. If the charges be not sustained, the officer must be immediately reinstated; but, if they are sustained, then the further duty devolves upon the board to determine whether the accusations are of such a character that "the good of the service requires that the suspended officer shall be removed from office, or shall be

·suspended from office without pay for a fixed period."
In such case and upon such procedure their decision is
doubtless "final and conclusive." Thus, after charges
have been preferred, the officer given an opportunity to
be heard in his defense, or in explanation of what-
ever may have been suggested as a cause of removal, the
case tried and determined, and the charges sustained,
the board of commissioners have power to remove the
accused absolutely from office, if the good of the service
requires it; and such, we think, was the intent of the
legislature in its use of the clause "when the good of the
service will be subserved thereby," in section 10. Hence,
under the provision hereinbefore quoted from section 10,
the board have power to dismiss an officer from service
only after charges have been filed, and an opportunity
given the accused to be heard.

Upon examination it will be observed that this inter-
pretation will give effect not only to all the sections
of the act of 1896, hereinbefore quoted and referred to,
respecting the tenure of office, but also to all the provi-
sions of sections 10, 11, and 17 respecting the power of
removal, which is in harmony with the well-known prin-
ciple of construction that in the interpretation of a stat-
ute every part thereof should be given effect, if possible.
Under the interpretation thus indicated, effect can be
given to all the provisions of the several sections men-
tioned, agreeably to the legislative intent apparent
from the context of the statute. The construction of the
law contended for by counsel for the respondent would
clothe the board with power which would enable it to
render section 11 an absolute nullity, because in every
instance of the filing of charges against an officer by a
citizen the board could prevent a hearing, as therein
provided, by dismissing the accused from office, under

section 10, on the ground that the good of the service would be subserved thereby, while in reality and in truth the good of the service and the public weal might be greatly injured thereby. So, likewise, such construction would empower the board to wholly disregard section 17. It is needless to say that the legislature intended no such results. That any man should be condemned unheard is contrary to every principle of natural justice, and courts are not inclined to countenance such arbitrary power, unless under the mandate of positive law; nor will they aid it by judicial interpretation. From an examination of the several provisions of the act respecting the chiefs of the departments, it seems clear that the intention of the legislature was to confer permanency upon those positions, secure experience, and remove the incumbents, so far as possible, from political and other improper influences in the management of the affairs of the departments, by fixing no limit to the tenure of office except good behavior. The design was, doubtless, to secure greater independence on the part of the officers, so as to procure better and more efficient service, and thereby promote the public good. We perceive no intention to invest the board of commissioners with a power so arbitrary as that contended for, which would enable it to remove summarily the heads of the police and fire departments at its mere will, and regardless of the experience and proficiency of the officer or of the rights and safety of the people. No such power can be exercised under the law. The tenure of office is fixed during good behavior, and the office *de jure* is entitled to hold it during life, unless the legislature otherwise directs, or by his own acts and conduct he forfeits his right to it; but such forfeiture cannot be declared without accusations having been preferred, and an opportunity given to be heard in

defense or explanation of the matters suggested as the cause of dismissal. It may be that in the case at bar the power of removal was exercised under an apprehension that such action was demanded in the interests of the public service, but this, if true, cannot be considered by us. The views herein are in accord with those expressed in the case of *People* v. *McAllister*, 10 Utah 357.

There, as here, the question was as to the existence of the power to remove summarily a municipal officer. For a review of the authorities and further discussion of the subject, we refer to that case. As the authorities were there examined with considerable care, we do not deem it important to review them here. Most of the cases cited by the respondent were decided under statutes different from the act herein considered, and while some courts seem to have given countenance to the views urged by counsel for the respondent, the great weight of authority is otherwise. In addition to the cases cited in *People* v. *McAllister*, *supra*, we here call attention to the following: Mechem, Pub. Off. §§ 454, 455; High, Extr. Rem. §§ 68, 69; *State* v. *Hewitt*, 3 S. D. 187; *Attorney General* v. *Jochim*, 99 Mich. 358; *Field* v. *Com.*, 32 Pa. St. 478; *Ham* v. *Board*, 142 Mass. 90; *Pehrson* v. *City Council*, 14 Utah 147; *Hallgren* v. *Campbell*, 82 Mich. 255; *State* v. *City of St. Louis*, 90 Mo. 19.

The respondent board having attempted to remove the appellant summarily without filing charges and giving him an opportunity to be heard, its action was null and void, and created no vacancy. The appellant was, therefore, entitled to be recognized by the board as the lawful incumbent, and had the right to discharge the duties and receive the emoluments of the office until lawfully removed, or until in some legal way he ceased to be the rightful incumbent.

It is also insisted for respondent that the appellant has mistaken his remedy, and that *mandamus* will not lie to restore him to office, because, since his removal, another person has had charge thereof. *Mandamus* is an extraordinary remedy, and the law is well settled that it will not lie to try a disputed title to an office, or to compel the admission of a claimant to an office the title to which is in dispute, and of which he has never discharged the duties or had the possession. Where a person, however, has been in the actual and lawful possession of an office, received and enjoyed the emoluments thereof, is entitled to the office *de jure*, and was unlawfully removed therefrom, a different rule appears to prevail. In such case *mandamus* is an appropriate remedy to restore the *de jure* officer to his office, and it is not necessary to resort to *quo warranto*, even though the office be in the possession of another. Spelling, in his work on Extraordinary Relief (section 1576), states the law as follows: "*Mandamus* is the proper remedy to restore one to the full enjoyment of an office or position of trust and emolument of a public nature from which he had been wrongfully removed, or which is wrongfully withheld. There is an important distinction to be taken between cases where *mandamus* is sought to induct a claimant into an office already filled and those where one actually in office has been removed or deprived of his rights and privileges therein. In the former cases, as has been shown, the incumbency of another under such color of right as constitutes him an officer *de facto* rather than a mere intruder will be a complete answer to the petition; but, where one has been wrongfully deprived of an office by the illegal appointment of another, *mandamus* will issue to effect his restoration, even though such appointee be in possession *de facto*. It is essential, however, to

entitle a relator who has been removed to *mandamus* for his restoration, that he be clearly entitled *de jure* to the office from which he has been removed. It is not sufficient that he show himself to be an officer *de facto*, but he must also show a clear legal right, and his failure to do so will warrant a refusal of the peremptory writ. High, Extr. Rem. § 67; *Lewis* v. *Whittle*, 77 Va. 415; *Eastman* v. *Householder*, 54 Kan. 63, *Ex parte Luske*, 82 Ala. 519; *Metsker* v. *Neally*, 41 Kan. 122; *State* v. *Hewitt, supra; Ham* v. *Board, supra.*

In the case at bar it clearly appears from the record that appellant was lawfully appointed to the office of chief of police of Salt Lake City; that he was in the active possession, discharged the duties, and received and enjoyed the emoluments thereof until he was removed; and that he is entitled to the office *de jure.* Therefore *mandamus* is a proper remedy, and the court erred in refusing the relief. The cause is reversed and remanded, with directions to grant the writ.

Zane, C. J., and Miner, J., concur.