No. 14,263.

STATE OF LOUISIANA EX REL. P. J. McMAHON vs. THE CITY OF NEW ORLEANS.

SYLLABUS.

1. In the absence of either express grant, or of express or implied limitation, of authority, a municipal corporation, as ordinarily constituted, possesses the incidental power, *for cause,* to remove corporate officers, whether elected by

it or by the people. If an officer has no franchise in his office—that is to say, if the nature of his office is a mere employment, he may be removed without notice, subject to the liability of the corporation for damages for breach of contract, if, by such removal, a contract is violated. But, where there is a franchise in the office, resulting from an election, or appointment, for a term fixed by law, there must be a charge against the officer to be removed, stated with substantial certainty ; notice must be given of the time and place fixed for the hearing ; reasonable opportunity must be afforded to defend, in person or by. counsel ; and, where the charge is insufficient, if proved, to justify the motion, or where, being sufficient, there is no evidence to sustain it, the officer is entitled to a *mandamus* to restore him.

2. The rule as thus stated is subject to the exception, that notice may be dispensed with, (1) when the officer appears and answers, (2) when he has permanently left the municipality, (3) in certain cases where it is apparent that the amotion was for good cause and that the order to restore would be without practical and useful effect.

3. The power of amotion conferred upon the city of New Orleans by section 12 of its charter is neither greater nor less than the city would have had if that instrument had been silent upon the subject, the effect of the grant, as contained in the charter, being merely to set at rest any doubt which might.have existed if the matter had been left to implication.

4. The authority conferred upon the council to "expel one of its members by a two-thirds vote of all the members elected to such council, five days' notice and an opportunity of being heard in his defense having previously been given such member," presupposes a *charge* sufficiently grave to justify expulsion. for the hearing of which time and place are fixed ; for, if there be no such charge and no time and place fixed for the hearing there can be no defense and nothing of which to give notice.

5. Whether the charge is sufficient, if proved, is for the ultimate determination of the courts ; but, where the notice and the opportunity to defend have been given, and evidence has been adduced in support of the charge, the courts will not, ordinarily, go behind the judgment for the purpose of inquiring " into the amount or the balance of evidence."

6. A statement, made in confidence by a member of the New Orleans city council to the mayor that he had heard rumors reflecting upon the official integrity of the other members of the council, is a privileged communication, and furnishes no ground for the expulsion of the member making it, even though the informants upon whom he relies fail to substantiate his statement.

7. The courts are disinclined to hold the speaking of slanderous words a ground for amotion from a public office.

8. Where it appears that a charge for which a member of the New Orleans city council was expelled was not formulated or made known to him with substantial certainty, and that he objected to being tried on that ground ; that his demand to be allowed the assistance of an attorney was ignored, or denied, whilst able counsel conducted the prosecution ; and that he was so expelled after a trial in which he was without witnesses, wholly unprepared. and wholly incompetent to cope with the professional ability arrayed against him, he will be restored to his office by *mandamus*, upon timely application.

A PPEAL from the Civil District Court, Parish of Orleans.— *Theard, J.*

*Robert J. Maloney, Hugh M. Ansley* and *Lazarus & Luce,* for Plaintiff, Appellant.

*Samuel L. Gilmore,* City Attorney, and *Arthur McGuirk,* Assistant City Attorney, for Defendant, Appellee.

## STATEMENT OF THE CASE.

The opinion of the court was delivered by

MONROE, J. Relator, having been elected a member of the city council of New Orleans, was expelled from that body, and he prays to be restored to membership by means of a writ of *mandamus.* The council and its members, for cause why the alternative writ should not be made peremptory, show, that, by section 12 of the city charter, the council is authorized to "expel any of its members by a two-thirds vote of all members elected to such council, five days notice and an opportunity of being heard in his defense having previously been given to such member," that the notice thus required was given to relator, as also the opportunity of being heard, but that, even had such notice not been given, it would, by relator's appearing, pleading, testifying, and cross-examining witnesses, have been waived. And they allege that the "discretionary right to determine what causes are sufficient to justify expulsion is not subject to judicial review." Wherefore they pray that the application of relator be denied. The evidence and admissions in the record establish the following facts, to-wit: Relator was elected to the council as the representative of one of the most populous wards in the city and was in the active discharge of his duty up to the moment of his expulsion. Early in October, 1901, he stated to the mayor that he had received information tending to show dishonest practices on the part of certain members of the council, and he requested that officer to consider the statement as confidential for a few days, when, as he said, he would produce his informants; and the mayor acceded to his request. Very shortly afterwards, without any fault on the part of the mayor, a publication on the subject appeared in one of the daily papers. Whether relator was in any wise responsible for this publication is a question which we are not called upon to determine, though we do not wish to be understood as conveying any intimation to his prejudice. However it happened, some version of the matter became public, and the mayor promptly arranged an interview,

in his presence, between the relator and a gentleman whose name had been mentioned as one of the latter's informants, with a view of determining what further action he should take; and, finding that the statements of the parties conflicted, he referred the whole matter to the council. The council, thereupon, appointed a special committee to wait upon the relator and request him "to furnish all information in his possession in connection with any accusations" against its members, and the committee so appointed called upon the relator, and, upon October 22nd, reported to the council, then in session, as follows:

"Committee called on the councilman, October 21st, and he declared:

"1. That he had never made accusations against any member of the city council.

"2. That all information in his possession were only rumors he had heard, which he was not able to substantiate, as to any wrong action of any member of the council.

"3. That the parties on whom he relied to substantiate these rumors had utterly failed to do so.

"4. That if he could have substantiated these rumors, he would have, at once, laid the matter before the grand jury.

"5. That he sincerely regretted to have given circulation to these rumors.

"6. That as a citizen of the community in which he had lived s ﹖ long and in the welfare of which he was so notably interested, and as a member of this community he regretted very much the publicity given to rumors which at first he was led to believe had some foundation, but which consequently (subsequently) he found out to be vague and could not be substantiated in any form whatever." Relator, being present, stated that he approved the report as made, and it was received and its further consideration postponed until the next meeting of the council. Upon October 29th, the council, having again assembled, the report of the special committee was read and the following motion was offered by the chairman:

"Be it moved by the city council of New Orleans that this council, taking cognizance of the report of the special committee appointed to wait on councilman P. J. McMahon, and to request him to furnish all information in his possession in connection with any accusation against members of this body, and also of the councilman's affirmation at the session of October 22nd, 1901, of the correctness of said report, accepts the expressions of his regret for the statements made or repeated. Be

it further moved that this council desires to record its disapprobation of a member of this council giving circulation to derogatory and unsubstantiated rumors, which acquire weight before the public when coming from a member, and which are incompatible with the dignity and responsibility of a public official. Be it further moved, etc., that this council, now having put on record the apology of councilman P. J. McMahon and disapproval of his conduct and its disapprobation of the circulation of unsubstantiated rumors, especially by a member of this body, considers the incident closed."

To this the relator objected, saying: "Mr. Chairman, before adopting that motion, I certainly will not accept section five of the report. I did not understand it when it was being stated by Mr. Zacharie, and I certainly will not stand by that. I did not circulate that. * * * On my sacred word, I had no idea that section five had any such wording. I have no objection to the balance of the report, but, to section five, I have, decidedly. * * * I would be the last man, if I thought that I had done anything wrong, to refuse to apologize, but, in my estimation, I have done nothing wrong, and I don't think I can apologize at this time. I simply went to the mayor and told him these things, in a confidential way, and if they got out, am I to be blamed?" The position of the relator, then, was, that he had not circulated the objectionable rumors and could not place himself in the position of apologizing for something that he had not done. Evidently, however, it was thought that his statement to the mayor was, in itself, a "circulation." Thus; the chair asked, "Wasn't that a circulation Mr. McMahon?'" Mr. McMahon. "No, sir. Not in my estimation. At this moment I don't think that I have done anything wrong." A member of the council. "It strikes me that whatever private conversation has taken place between councilman McMahon and the Honorable Mayor, the whole thing recoils squarely against the dignity of this body, and nobody else, and there is no use to try to get around it. There it is at our very door, right at the door of this body, and you cannot take it off unless it is purged some way or another. Unhappily for the gentleman, if he continues in the line he has adopted, although we have shown him all sympathy in the matter, if he proposes to continue as he has started to-night, of course he is like every man, he must take the consequences." By another member: " Now I move that, in view of the odium cast upon this council, it matters not by whom, but the circulation of these rumors has cast a stigma upon us that never will be

wiped out during the life of this administration. I, for one, don't care to use any drastic measures, but the council must be vindicated, or the charges made must be substantiated. And now, in order to give to the gentleman an opportunity of saying to this body whether he is right or wrong, I move that the chair request the gentleman to tender the necessary apology, and one fitting to the cause of all this scandal." The Chair: "Mr. McMahon, are you prepared to make an apology at all?" McMahon: "No, sir, I am not prepared. I can't make any apology." The Chair: "None at all?" McMahon: "I haven't done anything wrong that I know of." The Chair: "The remarks you have circulated?" McMahon: "I never circulated them." Another member: "I make this substitute: that the gentleman be called upon at the next meeting to substantiate the charges made, or to apologize, or to accept this as a legal notice, under the charter, that a motion will be made for his expulsion."

This suggestion was reduced to the form of a motion as follows: "Be it moved that, in view of the statement made on the floor of this council at this meeting by Councilman McMahon, that he does not consider that he has committed any offense against the dignity of this council, or any member thereof, that should cause him to apologize, that this council demands that Councilman McMahon shall substantiate the charges made by him, or apologize before this body at its next meeting, and in default thereof to take this as a notice, under the city charter, to answer why he should not be expelled from this body."

This motion was then adopted and the council adjourned until November 5th. Upon that day, however, relator presented a petition to the civil district court setting forth what had taken place and praying that the council be enjoined from proceeding further in the matter of said motion, and, as a rule *nisi* was issued ordering the council to show cause on November 8th why the injunction should not issue, no further action was taken until the evening of November 8th, when the rule *nisi* having been discharged, and an application to this court for prohibition, *mandamus* and *certiorari*, as against the district court, having been denied, the matter was again taken up and proceeded with as follows:

The clerk reported that a copy of the motion of October 29th had been sent to Mr. McMahon and the latter admitted that he had received it, and, being called upon for his answer, offered the following: "I object to the adoption of the resolution passed October 29, 1901, and any action which may be had thereunder for the following reasons:

"First.    That no specific charges have ever been formulated against me.

"Second.    That no notice of any charges has ever been served upon me.

"Third.    That no copy of any charges has ever been served upon me.

. "Fourth.    That no time and place have been fixed for the hearing of any charges.

"Fifth.    That no opportunity has been given to make a proper defense.

"In conclusion, I desire to state that my purpose in making the above objections is to properly meet and defend any charges that may be made against me, and I further desire a complete, full, and public investigation.

"Respectfully yours,

(Signed)    "P. J. McMahon."

The objections thus offered were overruled without debate; the original motion and the report of the special committee were each read twice, and thereupon the following was offered by one of the members: "I move that we proceed to prove up the statements made in that report, that Councilman McMahon gave utterance to the slanderous charges stated therein."    Section 12 of the city charter was then read, after which the suggestion was made by a member and by the chair: "Mr. McMahon, you have an opportunity of explaining  *  *  *  why you should not be expelled," and, no further explanation being offered, a witness was sworn on behalf of the prosecution, to whom the question was put:  "Will you kindly state what took place in the mayor's parlor, when Mr. McMahon, certain members of the council and yourself were present, in relation to this subject-matter, and wherein certain charges were made by Councilman McMahon, also when Dr. Pratt was present and what he said and what Mr. McMahon said?"    Mr. McMahon:  "Do I understand that Dr. Pratt was there?"    Mr. Stanley (a member): "One question."    The Chair: "You are out of order."    Mr. Stanley: "Hold on, give me a chance."    The Chair:  "Out of order."    Mr. Frantz (a member):  "If he will be short and brief, I will ask that he be heard."    The Chair: "You are out of order, I rule."    Mr. Stanley: "I put one question:  is Mr. McMahon entitled to an attorney or not?" The Chair:  "Out of order."    Mr. Stanley: "Answer, yes or no."    No answer to this question was given and the council, through one of its members, proceeded with the examination of the witness, in which

McMahon, from time to time, participated, and in the course of which he, now and then, made a statement on his own account and was, in turn, questioned by the members of the council, the proceedings, judged by the standard of rules established for trials in judicial tribunals, being conducted irregularly. On more than one occasion the accused complained that he was unprotected, meaning that he was without legal advice, whilst the prosecution was being conducted by a member of the council, who was also a member of the bar, and with the aid of one of the legal advisers of the city. At one time, relator asked, "Would you object to my being protected by a lawyer?" To which the reply was given by the member who was conducting the prosecution, "It is not for me to answer that; I am not the council." The relator then said, "I ask of the council, I pray that you give me a fair and square hearing. I am simply and purely a business man, and not a politician, and not a lawyer. Give me some time to prepare myself, and I will give you everything I know." It seemed to be the sense of the council, however, that he had had sufficient time and notice and the trial went on, with the result that the following resolution was adopted:

" That Councilman P. J. McMahon, having defamed the good name of the council by uttering and circulating slanderous charges against certain members of the body, whose names he has not given, and having failed either to substantiate his assertions or to express regret or retraction therefor, although given ample notice and opportunity so to do, and whose conduct in the premises is deemed a reproach and a stigma on the council, through which he has forfeited the esteem of that body, be it moved that said councilman, P. J. McMahon, be, and he is, hereby expelled from the council of the city of New Orleans."

And, thereafter, within a fortnight, the application which we are now considering was presented to the district court, and, after hearing, denied. And from the judgment so rendered, relator prosecutes this appeal. It may be further stated that, as matter of fact, the relator had summoned no witnesses and none were examined on his behalf, nor does it otherwise appear that he had prepared for a trial, on the merits, of any charge which it might have been the intention of the council to prefer against him. On the contrary, he did not seem to realize that he was being tried, but was evidently under the impression, until the contrary appeared, that the council would do no more, for the time being, than dispose of the exceptions which he had offered, and that the trial upon the merits could not take place until that had been done and the case had been again fixed.

OPINION.

In the absence of either express grant, or express or implied, limitation, of authority, a municipal corporation, as ordinarily constituted, possesses the incidental power, *for cause,* to remove corporate officers, whether elected by it or the people. If an officer has no franchise in his office; that is to say, if the nature of his office is a mere employment, the power to remove may be exercised without notice or hearing, subject to the liability of the corporation to an action in damages for breach of contract, if, by removing or discharging him, a contract has been violated. But, where there is a franchise in the office resulting from an election, or appointment, for a term established by law, there must be a charge against him, stated with substantial certainty, though not, necessarily, with the technical precision required in indictments; notice must be given of the time and place fixed for the hearing of such charge; reasonable opportunity must be afforded to answer the same, and to produce testimony; and the officer is entitled to be heard and defended by counsel; to cross-examine witnesses, and to except to the proof against him. If the charge be not denied, still, it must, if not admitted, be examined and proved. And, where the specific charge stated is insufficient to justify removal, or where, being sufficient, there is no evidence to sustain it, the officer is entitled to a *mandamus* to restore him. Dillon on Mun. Corps., Vol. 1, 242, 250, 253, 255. Thompson's Com. on the Law of Corps., Vol. 1, 820, 882.

" The analogies of the ordinary procedure in the courts of the state (in the absence of statute or by law) may be followed respecting such details as the notice, or summons, mode of service, etc. Notice may be dispensed with: By appearance and answer to the charges. 2. By a total desertion of the place, so that it is not practicable to give the notice, as where the officer has permanently, not temporarily, left the municipality and resides elsewhere constantly, with his famliy. Though he may have been absent or left the borough, yet, if he return and be in the place at the time of the motion, he is entitled to notice. If the amotion be for good cause, such as the conviction of an infamous crime, or the repeated declaration of the officer that he would not discharge the duties of his office, while it would be more regular to give the notice, yet its omission will not entitle him to a *mandamus* to be restored, for, if restored, he could be removed again, and the courts will not order a restoration, where they can see that there is good ground for an amotion, and that the order to restore would be without practical and useful

effect. With these exceptions, the party is entitled to notice of the intention to amove, so that he may have full and fair opportunity to be heard in his defense." Dillon on Mun. Corps., Vol. 1, 254.

The power of amotion conferred upon the city of New Orleans by its charter is neither greater nor less, in so far as the members of the council are concerned, than it would have been had that instrument been silent upon the subject. The only thing that can be said of it is, that, having been conferred by express grant, it relieves the situation of the doubt which, at times, has been suggested, as to whether such power is, incidental, or may be implied, in a municipal corporation. The section 12 of the charter, upon which the respondents rely, authorizes the council to "expel one of its members by a two-thirds vote of all the members elected to such council, five days' notice and an opportunity of being heard in his own defense having previously been given such members." This language, necessarily, presupposes a charge sufficiently grave to justify expulsion, for the hearing of which time and place are fixed; for, if there be no such charge, and no time and place fixed for the hearing, there can be no defense and nothing of which to give notice. This provision of law must also be construed with those which, referring to the writ of *mandamus,* read: "It may be directed to all corporations established by law: * * * 2. To compel them to receive and restore to their functions such of their members as they shall have refused to receive, although legally chosen, or whom they shall have removed without sufficient cause." C. P. 835.

"The sufficiency and reasonableness of the cause of removal," says Mr. Dillon, "are questions for the courts." Dillon Mun. Corps., Vol. 1, 252. This language is applied by the author to cases in which the power of amotion is implied. But we can find no reason for holding it to be inapplicable in the instant case, since, as we have seen, the only express authority conferred upon the respondent council with respect to the amotion of its members contemplates that such action shall be predicated upon "charges," and it would be unreasonable to suppose that the lawmaker intended that charges having no relevancy to the subject, or which, being relevant, are sustained by no proof, can afford a basis for legal expulsion.

True it is, that, where in such a case, a charge sufficiently grave to justify expulsion has been preferred, and the accused has received the notice, and has been afforded the opportunities for defense, to which he is entitled, and there has been evidence adduced in support of such

charge, the courts will not, ordinarily, go behind the judgment rendered for the purpose of inquiring "*into the amount, or the balance, of evidence.*" The soundness of the two propositions thus stated and the distinction between them have been heretofore recognized by this court in an opinion from which we quote as follows (beginning with the concluding paragraph of an excerpt from a text-book of recognized authority), to-wit: "While the judgment of inferior boards or tribunals upon matters which properly rest in their discretion will not be controlled or interfered with by *mandamus*, their judgment as to what the law allows them to determine, as to the extent of their jurisdiction, may be so controlled." High Ex. Leg. Rem., Sec. 69. "But" (said the court) "in order to escape the consequences of this universally recognized principle the learned counsel for the respondent takes the position that, under the powers conferred by the police statute, the right of removal is *discretionary* with the mayor. We do not think so. , The statute gives the mayor power to remove, it is true, but he can proceed only upon "charges preferred," and "in all cases the commissioners shall have an opportunity to present evidence on their behalf. Or, in other words, there must be charges preferred, a trial had, evidence adduced, and a judgment rendered. These proceedings are limitations which are placed on the mayor's power of removal, and the determination of what is just cause for removal is deemed a question of law," says Mr. High, "whose ultimate determination rests, not with the officers empowered to remove, but *with the courts.*" State *ex rel.* Denis vs. Mayor, 43 Ann. 106-7.

The questions with which we are at present concerned are: What was the charge preferred against the relator? Was he informed of it? Was it sufficient, if proved, to justify his expulsion? Was he afforded the opportunity to be heard to which he was entitled?

The charge of which he received notice was embodied in the resolution of October 29th, which reads:

"Be it moved that in view of the statement made on the floor of this council, at this meeting, by Councilman McMahon, that he does not consider that he has committed any offense against the dignity of the council, or any member thereof, that should cause him to apologize, that the council demands that Councilman McMahon shall substantiate the charges made by him or apologize before this body at its next meeting, and, in default thereof, to take this as notice, under the city charter, to answer why he should not be expelled from this body."

The resolution of expulsion reads as follows:

" That Councilman P. J. McMahon having defamed the good name of the council by uttering and circulating slanderous charges against certain members of that body, whose names he has not given, and having failed either to substantiate his assertions or to express regret or retraction therefor, although given ample notice, and whose conduct in the premises is deemed a reproach and a stigma on the council, through which he has forfeited the confidence of this body, be it moved that said councilman, P. J. McMahon, be, and he is hereby, expelled from the city council of New Orleans."

It is not easy in the light of what has transpired, or in any light, to determine the exact nature of the charge intended to be preferred by the first of these resolutions. And this emphasizes the propriety of the rule which requires that such charges shall be stated plainly, if not with technical precision. From the proceedings which took place at the time, a portion of which we have reproduced, it appears that the relator denied that he had ever made the statements which were considered as constituting his offense to anyone except the mayor, and, perhaps, a brother member of the council, and to them under the seal of secrecy; and it also appears that it was the opinion of some, if not all, the members of the council by whom the resolution was adopted that for him to have repeated to the mayor or to another member a charge which had come to his ears affecting the honesty of the council as a body, or of its members, individually, was an offense worthy of expulsion, unless he stood prepared to substantiate such charge, or to apologize for having so repeated it.

It is impossible, therefore, either from the language of the resolution, or from the evidence in the record, to determine whether the statements which the relator was called upon to substantiate, or apologize for, under penalty of expulsion, were those which, on information received, he had made to the mayor, or whether they were statements which it was the purpose of the resolution to charge him with having circulated in public. In so far as his communication was confined to the mayor, it was privileged, and did not constitute the " uttering or circulating " of slanderous charges, etc., for which, by the resolution of November 8th, he was expelled, since he was a member of the council, and had the right, in his own interest, and in the interest of the government of which the council and the mayor formed part, to bring to the knowledge of the latter any rumor affecting the reputation of that government, or its members, of which he may have been informed. Upon the

other hand, if it was the purpose of the resolution to charge that he had given public circulation to slanderous rumors, there ought to have been some sort of specification, though even then the proposition that one member of a municipal council will be expelled because he has slandered, or libelled, another member, is not supported by authority. In fact, it is said, by Mr. Dillon, to have been held in most cases that insulting language, or libel, by one member of such body to, or upon another, is to be punished by law and not by the corporation. Dillon, Vol. 1, 252, note 1; by Mr. Thompson, that " an analysis of the cases shows a strong disinclination on the part of the courts to hold the speaking of slanderous words as a ground of amotion." Thompson's Com. on the Law of Corps., Vol. 1, 810.

Beyond this, it appears, in the instant case, that the proceedings against the relator were conducted with the aid of one of the city's legal advisers, there present, and by a member of the council who is also a member of the bar, and that the request that the relator should be allowed the assistance of an attorney was ignored, and, in effect, denied. That, as a matter of fact the relator was wholly unprepared for a trial on the merits, and that he was wholly incompetent to cope with the professional ability arrayed against him, is abundantly manifest. We infer that the exceptions offered by him were prepared by legal advice and this was no doubt done with the expectation that, whether they were sustained or overruled, another day would be fixed for the hearing on the merits. When, therefore, he had offered them and they were overruled, and the council ordered that the trial should proceed, he found himself without advice or witnesses and, practically, helpless; and, in view of his application for relief, we do not think that he should be held to have waived his rights. There is no doubt that a good deal had taken place to arouse the just indignation of the council, and, believing as the members did, that the proceedings against the relator were regular, and that, in any aspect of the case, they had the right to expel him, it is fair to say that they acted not only without prejudice, or passion, but with forbearance, since they endeavored to persuade the relator to accord that which they believed they had the right to demand. For the reasons which we have stated, however, our conclusion is, that the relator was not sufficiently informed of the charge against him and that he was not afforded the opportunity for defense to which he was entitled.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be

judgment in favor of the relator and against the respondents, the city council of New Orleans and the members thereof, ordering and commanding said respondents to repeal and annul the resolution whereby relator was expelled from said city council and to restore him to membership and to the full discharge of his functions as a member. It is further ordered that respondents pay all costs.

BLANCHARD, J., took no part, being absent.