# KALBFUS *v.* SIDDONS.

OFFICERS; OATH OF OFFICE; STATUTES; CONSTRUCTION; REMOVAL OF
OFFICER; NOTICE AND HEARING; RESTORATION; MANDAMUS.

1. None but a *de jure* officer can in mandamus question irregularities in
proceedings by which he was removed from office.

2. An interpretation of a statute long acquiesced in, while not conclusive,
should not be disturbed unless clearly wrong.

3. The authority conferred by sec. 13 of the act of Congress of August
14, 1894 (28 Stat. at L. 282, chap. 287), upon the assessor of the
District of Columbia, in the discharge of his duties devolved upon
him, to "administer all necessary oaths and affirmations," should be
held to extend to the administration of the oath of office to assistant
assessors, in view of the assessor's exercise of such a prerogative
without objection for nine years, and especially in view of the policy
of Congress to permit principal officers to administer the oath of
office to their assistants, and of the provision in sec. 1758, U. S. Rev.
Stat. U. S. Comp. Stat. 1901, p. 1202, that the oath of office of any
appointed or elected officer under the United States government may
be taken before any officer authorized by any law of the United
States, or by the local law, to administer oaths in the state, territory,
or district where such oaths may be administered.

4. An appointment to take effect in two months when the office would be-
come vacant does not fall within the requirement as to qualification
in ten days, imposed by the act of Congress of August 14, 1894 (28
Stat. at L. 282, chap. 287), making the appointment of an assistant
assessor of the District of Columbia void if the appointee does not
qualify within ten days after receiving his appointment, or if he
does not assume the duties of the office within fifteen days after
qualifying; and qualification in such a case when the appointment
takes effect is sufficient.

5. An oath to support the Constitution of the United States and faithfully
discharge the duties of the office is a sufficient compliance with the
act of Congress of August 14, 1894 (28 Stat. at L. 282, chap. 287),
requiring assistant assessors of the District of Columbia to take oath
diligently, faithfully, and impartially to perform the duties of their
office.

6. Notice and hearing are prerequisites to the removal by the commissioner of the District of Columbia of an assistant assessor of the District under the act of Congress of July 1, 1902 (32 Stat. at L. 617, chap. 1352), sec. 6 of which provides that assessors or assistant assessors shall not be removed except for inefficiency, neglect of duties, or malfeasance in office. (Distinguishing *United States ex rel. Brown* v. *Lane,* 40 App. D. C. 533.)

7. The fact that the conduct of an official may have been the subject of inquiry in another tribunal does not relax the duty of the tribunal empowered to remove him, to accord him a hearing.

8. Proceedings for the removal of a public officer are adversary or judicial in character, and if the organic law of the governmental entity is silent as to the mode of procedure, the substantial principles of common law as to proceedings affecting private rights must be observed.

9. The requirement of notice and hearing of proceedings for the removal of an officer of the District of Columbia must be observed by the commissioners when seeking to effect a removal by reversing an acquittal of the incumbent by their predecessors, upon evidence taken on the hearing before the latter, and on a hearing as to the incumbent's conduct, had before a congressional committee.

10. Mandamus is the proper and most adequate remedy in favor of a person illegally removed from public office without notice and hearing, since, the order of removal being void, the attempted appointment of a successor is a nullity.

No. 2651. Submitted May 4, 1914. Decided May 22, 1914.

HEARING on an appeal by the relator from a judgment of the Supreme Court of the District of Columbia denying a writ of mandamus to compel defendants to vacate their order for the removal of relator from office. *Reversed.*

The COURT in the opinion stated the facts as follows:

Appeal from a judgment in the supreme court of the District, denying relator, Samuel T. Kalbfus, a writ of mandamus to require Frederick L. Siddons, Oliver P. Newman, and Chester Harding, the defendants, to vacate their order of August 19, 1913, removing relator from the office of assistant assessor of the District, and to require them to restore him to

that office, the relator's contention being that the order of removal was void because passed without notice and hearing.

The act of Congress of August 14, 1894 (28 Stat. at L. 282, chap. 287), provided for the appointment of three persons as a permanent board of assistant assessors, the appointees to hold office "for the term of four years, unless sooner removed by said commissioners for cause satisfactory to them.". By sec. 6 of the act of July 1, 1902 (32 Stat. at L. 617, chap. 1352), the board of assistant assessors was increased to five persons, and the words above quoted in the act of 1894 were superseded by the following: "The assessor of the District of Columbia and the members of said permanent board of assistant assessors *shall not be removed except for inefficiency, neglect of duty, or malfeasance in office.*"

On April 27, 1904, the resignation of a member of the permanent board of assistant assessors was accepted to take effect June 30, 1904, and the relator was promoted to the vacancy, the "promotion to take effect July 1, 1904, vice Morsell resigned." On the day his appointment took effect, namely, on said July 1, 1904, the relator took and subscribed before the assessor of the District an oath to support the Constitution of the United States "and faithfully discharge the duties" of his said office. He then entered upon the discharge of his duties. On October 4, 1911, the then commissioners of the District passed an order to hold an investigation into the official conduct of the relator, and he was served with notice and accorded a hearing. Much testimony appears to have been taken, and on November 3d, following, the commissioners made public their finding to the effect that the relator had not been guilty of inefficiency, neglect of duty, or malfeasance in office. He was therefore continued in office.

On August 18, 1913, the defendants, they having superseded the prior board of commissioners, wrote the relator as follows: "The board of commissioners of the District of Columbia desire hereby to afford you the opportunity of your own accord to retire from the service of the District government, and will accept your resignation from that service, effective thirty

days from this date, with leave of absence during that period."
On the same day relator replied, declining to resign his office.
Thereupon, on August 19, 1913, without notice or hearing to
the relator, the defendants passed the following order: "That
Samuel T. Kalbfus is hereby removed from the office of assist-
ant assessor of the permanent board of assistant assessors of the
District of Columbia and from the service of the said District
for inefficiency, neglect of duty, malfeasance in office, and that
Edward W. Oyster is hereby appointed assistant assessor in the
place and stead of Samuel T. Kalbfus." On the evening of the
same day a notice of this order was served upon the relator, and
during the same evening Mr. Oyster took the oath of office as his
successor. The relator thereupon, on August 21st, notified the
assessor of the District that he had been served with an alleged
illegal order of removal, and had been informed that he would
not be permitted to enter the assessor's office or the municipal
building. He further advised the assessor that he was ready to
discharge the duties of his office, and that he had taken steps to
have the validity of the order of removal determined. On the
26th of August, following, in a communication to the commis-
sioners, he requested them to vacate their order of August 19th,
saying: "No charges were presented against me, nor was any
notice of charges given me, nor has any hearing been afforded
me either by the commissioners or by any tribunal having law-
ful power to remove me from office." To this communication he
received no reply.

Thereupon he filed his petition herein. In his petition he
avers that "he has not been guilty of any act or acts constituting
neglect of duty or malfeasance in office, or inefficiency; that he
has never neglected his duty, nor has he ever been charged with
so doing; that he is not inefficient, but has from the date of his
appointment down to the present time efficiently and faithfully
discharged every duty pertaining to the said office; that he has
never in any respect whatever been guilty of any act or acts
constituting malfeasance in office, or affording any foundation
for any such charge against him."

In their answer the defendants aver, *inter alia,* that the re-

lator did not take an oath of office at any time, nor within ten days after receiving notice of his appointment, but instead took his oath before the assessor of the District of Columbia, who, as they contend, was not an officer having power or jurisdiction to administer it. They further aver that they review the evidence taken during the hearing held by their predecessors, in which the relator was acquitted, and determined from such evidence that the relator was inefficient, neglectful of duty, and guilty of malfeasance in office; that, independently of that hearing, and "also by reason of the said testimony of the said Kalbfus before the committee of the House of Representatives on the District of Columbia," they reached the same conclusion.

Issue was joined and a hearing had, the defendants testifying that they did not "know, nor is there any record, of any charges having been preferred against the relator between November 3, 1911, and August 19, 1913."

Mr. *Frank J. Hogan* for the appellant.

Mr. *Conrad H. Syme,* Corporation Counsel, and Mr. *Roger J. Whiteford,* Assistant, for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

Was the relator a *de jure* officer when the defendants passed the order of removal? If not, it necessarily follows that he has no standing here. The act of August 14, 1894 (28 Stat. at L. 282, chap. 287), under which the relator was appointed, required each person appointed as a member of the permanent board of assistant assessors, within ten days after receiving notice thereof, to "take and subscribe an oath to diligently, faithfully, and impartially perform all and singular the duties imposed upon him by this act." And if any appointee should fail to qualify as aforesaid within the time prescribed, or should fail to enter upon the discharge of his duties within fifteen days after such qualification, the appointment was declared void, and

it was made the duty of the commissioners forthwith to make another appointment. Section 9 of the act provided that the assessor of the District, an office already in existence under prior statutes, and the said board of assistant assessors, with the assessor as chairman, should compose a board of equalization and review. Section 13 authorized "the assessor of the District of Columbia and each member of said board of assistant assessors, *in the discharge of any of the duties devolved upon him or them,* or the board of equalization and review, to "administer *all necessary oaths or affirmations.*" The section further authorized the assessor, or in his absence the temporary chairman of said board, to summon the attendance of any person before the board, to be examined under oath touching such matters and things as the board of assistant assessors or the board of equalization and review might deem advisable in the discharge of their duties.

Under said act of July 1, 1902 (32 Stat. at L. 617, chap. 1352), it was made the duty of the assessor to designate three members of the permanent board of assistant assessors for the assessment of real estate, and two other members to compose a board of personal-tax appraisers. The five members of said permanent board of assistant assessors, together with the assessor as chairman, were constituted boards of equalization and review of real estate assessments and of personal tax appeals. It was further provided that the assessor should "act as chairman *ex officio,* of the several boards aforesaid." The two members of the permanent board of assistant assessors designated by the assessor to assess personal property were required to do so "under the direction and supervision of the said assessor." The act further provided that the board of assistant assessors, with the assessor as chairman, should compose a board of personal-tax appeals, and further that "such board of assistant assessors shall also perform such other official duties as may be required of them by the assessor of the District of Columbia."

Not only did the relator take an oath of office before the assessor, but each of his associates did so. This oath was filed by the commissioners, the relator entered upon the discharge of

his duties, and more than nine years elapsed before any question whatever was raised as to the authority of the assessor in the premises. Even when the defendants passed their order of removal, they did not question that relator was a lawful holder of the office from which they attempted to exclude him. While, of course, this is not conclusive, nevertheless, such a contemporaneous interpretation of the statute long acquiesced in ought not to be disturbed unless clearly wrong. *National Wall Paper Co.* v. *Haller & R. Co.* 24 Wash. L. Rep. 650. Under the Acts of 1894 and 1902 several boards were established, composed in each instance of *assistant* assessors and the assessor, and in each instance the assessor was made chairman. The assistant assessors were subordinate to, and, in the main, subject to the direction and supervision of the assessor. His office already was in existence, and in view of the well-known policy of Congress to allow a principal to administer the oath of office to his assistants (as for instance under the act of August 29, 1890, 26 Stat. at L. 370, chap. 820, authority is given the chief clerks of the several executive departments and of the various bureaus and offices thereof "to administer oaths of office to employees required to be taken on their appointment or promotion"), and that the assessor was empowered to "administer all necessary oaths or affirmations," we think the above administrative interpretation not unreasonable. Moreover, by sec. 1758, Rev. Stat. U. S. Comp. Stat. 1901, p. 1202, the oath of office of any person appointed or elected to any office of honor or trust under the government of the United States "may be taken before any officer who is authorized by the laws of the United States, or by the local municipal law to administer oaths, in the State, territory, or District where such oath may be administered." The assessor of the District of Columbia was authorized to administer oaths, and it well might be held, if any doubt otherwise existed, that this statute enlarged his powers so as to qualify him to administer oaths of office. A different conclusion on this point might invite an attack upon the validity of the many assessments made by the board of which the relator was a member. *Parker* v. *Overman,* 18 How

137, 15 L. ed. 318; *Martin* v. *Barbour,* 140 U. S. 634, 35 L. ed. 546, 11 Sup. Ct. Rep. 944.

As to the second contention, that the relator did not take the oath of office within ten days after receiving his appointment, little need be said. The requirement that he take the oath within ten days after receiving notice thereof was coupled with the further requirement that he enter upon the discharge of his duties within fifteen days after such qualification. Inasmuch as his appointment was not to take effect until July 1st, had he qualified in May, as defendants now contend he should have done, his appointment necessarily would have been rendered void fifteen days thereafter; for in the nature of things he could not have entered upon the discharge of his duties while the office was filled by another. Giving this statute a reasonable construction, one that will not defeat its obvious intent, it is plain that the relator qualified and entered upon the discharge of his duties at the earliest possible time; namely, when his appointment took effect.

While the act of 1894 required assistant assessors to take and subscribe an oath diligently, faithfully, and impartially to perform the duties of their office, we think the oath which relator took was a substantial compliance with this requirement, for he therein swore to support the Constitution of the United States and faithfully discharge the duties of his office. He could not faithfully discharge those duties if he was not diligent and impartial. To be faithful one must be true and constant in the performance of duty, and exact in attending to commands. Century Dictionary. Mr. Dillon, in his work on Municipal Corporations, vol. 1, 5th ed. sec. 395, says that "where the statute requires a prescribed oath of office before any person elected 'shall act therein,' a person cannot justify as such officer unless he has taken an oath in substantial, not necessarily literal, compliance with the law." See also *State, Wilkinson, Prosecutor,* v. *Trenton,* 35 N. J. L. 486. We therefore rule that the relator, at the time of his alleged removal, was a duly qualified member of the permanent board of assistant assessors.

We will next determine whether notice and an opportunity to be heard were essential requisites to the removal of relator. Under said act of 1894 the term of office of the assistant assessors was fixed at four years, and the commissioners were empowered at any time to remove such officers for satisfactory cause. Under that statute it is too plain to admit of argument that the commissioners could remove at pleasure for such cause as they deemed sufficient, and either with or without notice and hearing. *United States ex rel. Brown* v. *Lane,* 40 App. D. C. 533. But Congress evidently was not satisfied to continue this grant of unlimited power of removal in the commissioners, for by the act of 1902 the limit of the term of service of these assistant assessors is repealed, and it is expressly provided that they *"shall not be removed"* except for the causes mentioned. When, therefore, Congress used this language, it limited the right of removal in the commissioners to the causes specified, and notice and hearing thereafter were requisites to the exercise of their jurisdiction. *Reagan* v. *United States,* 182 U. S. 419, 45 L. ed. 1162, 21 Sup. Ct. Rep. 842; *Shurtleff* v. *United States,* 189 U. S. 311, 47 L. ed. 828, 23 Sup. Ct. Rep. 535; *Ham* v. *Board of Police,* 142 Mass. 90, 7 N. E. 540; *Bannerman* v. *Boyle,* 160 Cal. 197, 116 Pac. 732; *State ex rel. Burke* v. *Jenkins,* 148 N. C. 25, 61 S. E. 608; *Gracey* v. *St. Louis,* 213 Mo. 384, 111 S. W. 1159; *State ex rel. McMahon* v. *New Orleans,* 107 La. 632, 32 So. 22; 2 Dill. Mun. Corp. 5th ed. sec. 473. The hearing must, of course, be before the tribunal charged with the duty of according it and of determining the issues. *United States ex rel. Wedderburn* v. *Bliss,* 12 App. D. C. 485. The fact that the conduct of an official may have been the subject of inquiry before another tribunal does not relieve of its duty the tribunal charged by law with according him a hearing before removing him. "The proceedings in all cases where the amotion is for cause is adversary or judicial in its character; and if the organic law of the corporation is silent as to the mode of procedure, the substantial principles of the common law as to proceedings affecting private rights must be observed." 2 Dill. Mun. Corp. 5th ed. sec. 480; *Darmstat-*

*ter, Prosecutor,* v. *Passaic,* 81 N. J. L. 162, 79 Atl. 545; 28 Cyc. 440.

Whether, in the absence of any showing that would justify the reopening of a decision rendered by a judicial or quasi-judicial tribunal proceeding in accordance with the requirements of due process, the present commissioners would be empowered to review the finding of their predecessors, we need not now determine. Certain it is that they have no power to review that finding without notice to the relator. They are in no better position than their predecessors would have been. Could their predecessors, after a lapse of nearly two years following their acquittal of the relator of the charges upon which he was tried, have reopened the case and reversed their finding without notice to him? Clearly not. It follows that the attempt of the defendants to justify their failure to give the relator notice and accord him a hearing, upon the ground of his previous trial, and because of the hearing before said congressional committee, must fail.

When the defendants passed their order of removal the relator was in the actual and legal possession of his office. In other words, he was in office *de jure* and *de facto.* Congress having explicitly withdrawn from the commissioners the power of removal except for the causes specified, notice and hearing, as we have seen, were essential requisites to the exercise of their jurisdiction to remove at all. Since their order of removal was passed without notice and hearing, it necessarily follows that their action constituted an arbitrary exercise of power, and was void. The question, therefore, is presented whether mandamus is the appropriate remedy. The authorities are overwhelming that it is. "A mandamus to restore," says Lord Mansfield, "is the true specific remedy where a person is wrongfully dispossessed of any office or function which draws after it temporal rights, in all cases where the established course of law has not provided a specific remedy by another form of proceeding." *Rex* v. *Blooer,* 2 Burr. 1045. In *Harwood* v. *Marshall,* 9 Md. 83, an apposite case, it was ruled that mandamus was the appropriate remedy, because a judgment

under quo warranto might amove the incumbent, but would not install the claimant in the office from which he had been illegally removed. In *Dew* v. *Sweet Springs Dist. Judges,* 3 Hen. & M. 37, 3 Am. Dec. 639, the court said: "I take it, therefore, that even in England, * * * the possession of the office by another is no impediment to a mandamus, where the title of the applicant is clear; where the title of the incumbent is clearly void; and where no utility can result from a trial on a quo warranto information." In *State ex rel. Mason* v. *Patterson,* 35 N. J. L. 190, it was objected that inasmuch as the office to which the relator sought to be restored was then held by another, the appropriate remedy was by *quo warranto.* The court said: "But this is not the case of attempting to oust from office by mandamus a person who is in by color of right. There is no right here. The pretended appointment is a mere nullity. There was no appointing board, and those who attempted to act had no authority. The applicant here is clearly still in office by legal appointment, and the effort is to oust him without legal authority. He has a right to this remedy by mandamus." In *Com. ex rel. O'Brien* v. *Gibbons,* 196 Pa. 101, 46 Atl. 313, where the point was made that quo warranto, and not mandamus, was the appropriate remedy, the court said: "There is no contest as to the relator's original title to his seat under a valid election, but only as to the illegality of his ouster. If this was not valid, he never has been ousted at all, and mandamus is the proper remedy to prevent his further unlawful exclusion. We have nothing to do with the title of his alleged successor, who was apparently elected by the board to fill a vacancy that did not exist. This cannot affect the relator. He was admittedly elected to the office, has never been out of it in contemplation of law, and the mandamus simply compels the respondents to recognize his established right." In *Lawrence* v. *Hanley,* 84 Mich. 399, 47 N. W. 753, the court said: "And when a person in office *de jure et de facto* is interfered with, by one whose lack of title is plain and governed by adjudicated cases in our own courts, it is not only proper, but best, to settle the question by mandamus."

In *State ex rel. Moyer* v. *Baldwin,* 77 Ohio St. 532, 19 L.R.A. (N.S.) 49, 83 N. E. 907, 12 Ann. Cas. 10, the court, after an exhaustive review of the authorities, pointed out that there was no other adequate remedy in answering the contention that, because the office was then filled by another, quo warranto was the proper remedy, and said: "The restoration of relator to his office, and the ousting of the person who was appointed to succeed him, does not present a case of determining title to an office, because his removal, having been absolutely void, the pretended appointment is a mere nullity." To the same effect are the following adjudged cases: *Metsker* v. *Neally,* 41 Kan. 122, 13 Am. St. Rep. 269, 21 Pac. 206; *Pratt* v. *Police & Fire Comrs.* 15 Utah, 1, 49 Pac. 747; *Ex parte Lusk,* 82 Ala. 519, 2 So. 140; *State ex rel. Hayden* v. *Arnold,* 151 Wis. 19, 138 N. W. 78; *Strong's Case,* 20 Pick. 484.

In the present case the removal of the relator having been illegal and void, the office never became vacant, and the attempted appointment of his successor was a mere nullity. In contemplation of law, the relator never has been out of his office, but as in fact he has been and now is being illegally excluded from it, it is clear that mandamus is the most adequate remedy to restore him to his rights. The judgment will therefore be reversed, with costs, and the cause remanded for further proceedings.                           *Reversed* and *remanded.*