Summers, J.
The relator, George B. Moyer, was a detective in the police department of the city of Youngstown. Charges' against him of misconduct in office were filed with the defendant, Frank L. Baldwin, the mayor of the city. The relator protested against the hearing of the charges by the mayor on the ground that the mayor was without jurisdiction. His objections were overruled, and after a full hearing the mayor found that certain of the charges were sustained and removed him from office and certified in writing his removal and the cause thereof to the board of public safety of the city. Thereupon the relator brought a proceeding in mandamus- in the court of common pleas to require the defendant to restore him to his office. The defendant answered that the relator took no appeal from the decision of the. mayor to the board of public safety, and that subsequently to the action of the mayor the council of the city repealed the ordinance creating the office which the relator had filled, and enacted another ordinance providing for the appointment of two detectives and that the mayor had filled these offices by appointment and that the appointees had duly qualified and were then in office.
*537 The court of common pleas allowed a peremptory writ. The circuit court on appeal dismissed the petition.
The principal contention is whether mandamus is the proper remedy and whether the mayor has authority originally to hear charges against an officer of the police department and to remove the officer in the event he finds that the charges have been sustained, or whether he may act only after the chief of police has suspended an officer and filed written charges with the mayor.
By Section 6741, Revised Statutes, mandamus is defined as, “a writ issued in the name of the state, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station,” and it is contended that it is not the remedy because nowhere does any statute specially enjoin upon the defendant, as a duty resulting from his office, the performance of the act of withdrawing his certificate of removal.
The remedy by writ of mandamus did not originate with the legislature but with the courts, and is said to have been in use as early as the thirteenth century. The constitution of 1802 does not mention it, but power to issue the writ is specially given to the supreme court by the act of April 15, 1803, 1st Chase, 355. In the matter of James Turner, 5 Ohio, 542, Judge Lane, speaking of the statute, says: “The occasions upon which the writ is to issue are not pointed out, and it is necessary to recur to the common law to learn in *538 what cases the writ is properly applicable.” In The Universal Church v. Trustees of Section Twenty-nine, etc., 6 Ohio, 446, the court declined to depart from the common law rules and practice on the writ and it was not until the act of 1835 (Swan, 1841, page 689), that the practice was regulated by statute. That statute is limited to matters of practice and did not touch the jurisdiction, and it still was necessary to recur to • the common law to learn in what cases the writ might issue. So the matter stood until after the adoption of the constitution of 1851, and until the adoption of the civil code.
The constitution of 1851 confers original jurisdiction in mandamus on the supreme court, and subsequently on the circuit court, and such jurisdiction is conferred on the court of common pleas by statute.
The jurisdiction in mandamus that is conferred ■by the constitution is the common law jurisdiction as it then was exercised in this state, and it is not in the power of the legislature either to add to or take from it. ' The provisions of the statutes must be regarded as merely regulating the practice. The)''. remain substantially as they were in the code of civil procedure of 1853. That the provisions of the code were intended merely to relate to the practice is evident from the report of the code commissioners. On page 224 of their report, under the chapter entitled, ■ “Proceedings upon mandamus,” they say: “We found it necessary to prepare a chapter on this subject, because we have repealed the whole of the practice act in which the provisions in reference to the man *539 damus are to be found (Swan, 689, 690). It will be noticed that we have amplified somewhat the sections in the old statute, but the proceeding under this chapter will be about the same as before.”
The statutory definition does not define the act as one enjoined by statute but as one enjoined by law. The definition appears to have been compounded from the 14th section of the act of 1835 and from Blackstone. Attention to Blackstone’s definition, and to the cases, will discover that the act which the writ directs to be performed, is one that the courts determine it is the duty of the respondent to do because it appertains to his office, trust, or station; and it is specially enjoined by law when it is so determined.
The purpose in defining mandamus was not to limit the jurisdiction, but merely to describe the writ, and it is still necessary to recur to the cases to learn the occasions when it may issue.
In many of the states mandamus is treated as a civil action, but in this state, while it has been so declared in The State of Ohio, ex rel. Barker v. Philbrick, Director Public Safety, etc., 69 Ohio St., 283, still it is treated as preserving its prerogative character. That is, it is not used for the redress of private wrongs but only in matters relating to the public. Recurring to the cases it will be found that when purely a prerogative writ it was chiefly used to enforce restitution to public offices and to such an extent that it was then designated in the. reports as the “writ of restitution.”
That the writ of mandamus is the appropriate *540 remedy to restore an officer to his office and that it will lie when there is no other adequate remedy, is laid down in the text books without exception, and in the following cases the writ was allowed.
City of Chicago v. The People, 210 Ill., 84. This was a proceeding in mandamus by a police patrolman to compel the city of Chicago and the general superintendent of police to place his name upon the roster of police patrolmen, from which it had been omitted and excluded by a former general superintendent of police, and to place his name upon the police payroll, from which it had been omitted and excluded; also to compel the civil service commissioners of the city to certify his name to the comptroller- of said city as a person entitled to pay as a police patrolman of the city, and to compel the city to pay the petitioner his salary for the time he had been excluded. It was held that his discharge was unwarranted because the trial board was not constituted as required by the rules of the civil service commission, and because he was not given an opportunity to be heard in his own defense. It was also held that if the trial had been held in the manner pointed out by the statute that then the action of the civil service commission would not be reviewable by the courts. A mandamus for the money was refused, but the lower court was directed to enter a judgment awarding a writ of mandamus commanding the civil service commissioners and the general superintendent of police and the comptroller of the city of Chicago forthwith to place the name of petitioner upon the roster of police patrolmen and upon the police payroll of said city of Chicago, to *541 the end that the relator may at once enter upon the performance of his duties as a police patrolman with the same right to continue in the performance thereof and receive salary therefor as he had to continue in the performance thereof and receive salary therefor prior to his unlawful removal, and that the judgment so entered should not prejudice the right of the relator to assert his claim for right of salary for the period intervening between his removal and restoration in any appropriate form of action, nor the right of the city of Chicago to interpose any lawful defense thereto.
Metsker v. Neally, 41 Kan., 122. In this case the mayor of the city of Topeka suspended the city engineer and placed another in his place, and the city marshal forcibly deprived the engineer of his office-room, books, papers, records,, etc., and prevented him from exercising the duties of his office. A peremptory writ was allowed. In the opinion it is said that: “If the title to this office were in dispute, the action to determine it would probably be quo warranto; but it is admitted that the plaintiff was the city engineer by regular appointment and in the actual and lawful possession of the enjoyment of the office. There is no question of a contested election or disputed right to this office, except as it arises from the suspension alone. The plaintiff, up to July 3d, was the city engineer by undisputed right; was he wrongfully or illegally suspended? That is the sole question to be decided in this action.” It was held that mandamus was the proper remedy to restore him *542 to his office, and that if the suspension was unauthorized there was no vacancy to fill.
The State, ex rel., v. Common Council of Jersey City, 1 Dutch., 536. In this case the common council resolved that, “the president of council be directed not to appoint Tyrrell on any committee and that the clerk do not call his name among the list of members in any action, vote or proceeding of the council, and that he be not allowed to take part in any debate on any question which may come before the board of aldermen.” It was held that the council had power to expel but not power to suspend, and that this resolution of council was equivalent to suspension, and a peremptory writ of mandamus was allowed to the common council to restore the relator to the exercise of his lawful rights as an alderman and member of that body from which he had been suspended 'by the resolution in question.
The State, ex rel. Mason, v. Mayor, etc., of Paterson, 35 N. J. L., 190. In this case it was held that an appointment for city treasúrer by less than 'a majority of the whole number of aldermen was unlawful and void, and that the treasurer who had been ousted by such illegal act might be restored to his office by a writ of peremptory mandamus. It was contended that quo warranto was the proper remedy and that mandamus was not the proper remedy, because the person who had been appointed to the office was in by color of right. But the court said: “This is not the case of attempting to oust from office by a mandamus a person who is in by a color of right. There is no right here. The pretended appoint *543 ment is a mere nullity. There was no appointing board and those who attempted to act had no authority. The applicant here is clearly still in office by legal appointment, and the effort is to oust him without legal authority. He has a right to this remedy by mandamus.”
Leeds v. Atlantic City, 52 N. J. L., 332. In this case it is held that, “where a mandamus is applied for to compel a corporation to restore a relator to an office to which he is prima facie entitled, the incumbent is not a necessary party to the allowance of a peremptory mandamus.”
Commonwealth, ex rel., v. Gibbons, 196 Pa. St., 97. “Where there is no contest as to a school director’s original title to his seat under a valid election, but only as to the legality of his ouster for an alleged wilful absence from meetings, the remedy of the director is mandamus to prevent his further unlawful exclusion. The remedy by quo warranto against the person chosen to succeed him does not apply.” In the opinion it is said: “There is no contest as to the relator’s original title to his seat under a valid election, but only as to the legality of his ouster. If this was not valid, he never has been ousted at all, and mandamus is the proper remedy to prevent his further unlawful exclusion. We have nothing to do with the title of his alleged successor who was apparently elected by the board to fill a vacancy that did not exist. This can not affect the relator. He was admittedly elected to the office, has never been out of it in contemplation of law, and the mandamus simply compels the respondents to recognize his established right.”
*544 Pratt v. Board of Police and Fire Commissioners, 15 Utah, 1. In this case the chief of police of the city of Salt Lake had been removed from office by the board of police and fire commissioners and another person had been appointed in his place and had taken possession and was discharging the duties of the office. It was held' that the board had no authority to dismiss him without charges and without a hearing and that, “where a person has been in the actual and lawful possession of an office, received and enjoyed the emoluments thereof, is entitled to the office de jure and is unlawfully removed, mandamus is the appropriate remedy to restore the de jiire officer to his office and it is not necessary to resort to quo warranto, even though the office is in the possession of another.”
Schmulbach et al. v. Speidel et al., 50 W. Va., 553. “Mandamus lies to correct an improper amotion from office and to restore to the full enjoyment of his franchise a person who has been improperly deprived thereof; and when one has been improperly deprived of his office by the illegal appointment of another, the writ lies to compel his restoration though the person appointed in his stead be in possession de facto.”
The State, ex rel. Gill, v. Common Council, 9 Wis., 254. In this case a peremptory writ of mandamus was allowed to restore the relator to the office of superintendent of schools from which he had been improperly removed. Held: “Mandamus is the proper remedy to restore a party to the possession of an office from which he has been illegally removed.” In the opinion it is said: *545 “But it is objected in the return that the council can not restore the relator because they have not the power of appointment, and that this power belongs to the school commissioners. But clearly it is not an appointment that the relator seeks, or is entitled to, if he has been illegally removed.. If it was to be an appointment by the appointing power it is very certain that this court could not control its discretion or compel it to appoint any particular person. But this proceeding is based on an entirely different theory. Its claim, is that the relator does not need any appointment, but that his title is and has been complete and perfect to the office all the time, and he asks that the council which has, without authority, removed him from that to which he is entitled, shall retrace its illegal steps, vacate its proceedings, and remove the obstacles which it has unlawfully placed in his way. He does not ask them to appoint him, but by vacating their unauthorized proceedings against him to restore him to that to which he is already appointed. Their return that the power of appointment belongs to the school commissioners is no answer to this demand. The demurrer is sustained and the peremptory writ awarded.”
But it is contended that the relator has a remedy by injunction and that a remedy in equity is a remedy in the ordinary course of the law within the inhibition of Section 6744, Revised Statutes, that, “the writ must not be issued in a case where there is a plain and adequate remedy in the ordinary course of the law.” Freon v. Carriage Co., 42 Ohio St., 30; State, ex rel., v. Carpenter, *546 51 Ohio St., 83; Cincinnati Volksblatt Co. v. Hoffmeister, 62 Ohio St., 189.
The allowance of the writ always was in the discretion of the court and its discretion sometimes was controlled by the existence of a remedy in equity, but respecting the jurisdiction of the court such a remedy never was a remedy at law. However, Section 2, Article XIV, of the constitution, provides.for the abolition of the distinct forms of action at law and for the administration of justice by a uniform mode of proceeding, without reference to any distinction between law and equity, .and if there is a remedy under the code it is in the ordinary course of the law.
But there is no such remedy in equity. In the opinion in In re Sawyer, 124 U. S., 200, 210, Mr. Justice Gray reviews the authorities and says: “The office, and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property. It has no jurisdiction over the prosecution, the punishment, or the pardon of crimes or misdemeanors, or-over the appointment and removal of public officers. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, or for the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government.”
In Reemelin et al. v. Mosby, 47 Ohio St., 570, it is held: “The remedy by injunction may be employed by the incumbent.of a public office to protect his possession against the interference of *547 an adverse claimant whose title is in dispute, until the latter shall establish his title at law; but it is not the appropriate remedy to try the title to a public office, or to determine questions concerning the authority to make appointments thereto.”
In Harding v. Eichinger, 57 Ohio St., 371, Eichinger averred that he was elected a member of the board of education of the city of Mansfield, and that he duly qualified, but that on the night the members met to organize, Harding intruded into the office and usurped his (Eichinger’s) place, and excluded and forcibly prevented him from performing the duties of the office. The court of common pleas granted an injunction against Harding and on appeal the circuit court did the same. Held: “Injunction will not lie at the suit of a claimant to a public office who is out of possession, against an adverse claimant who is in possession.”
Moyer is out of possession and he has no adequate remedy at law. A suit for his salary is not an adequate remedy, because that does not restore him to the office, and the public is interested in having official duties performed by those whose duty it is to perform them, and if they are ousted without authority it is in the public interest and conducive to peace and good government that they shall be speedily restored by a mandamus.
The only other remedy suggested is that of appeal to the board of public safety. But if the mayor was without jurisdiction to hear the charges his action was void and the relator was not required to pursue that course.
This brings us to the question on the merits of *548 the case, and that is, whether the mayor has authority originally to hear charges against an officer in the police department and to remove the officer in the event he finds that the charges have been sustained, or whether he may act only after the chief of police has suspended the officer and filed written charges with the mayor.
Section 147 of the. new municipal code (96 O. L., 69), Revised Statutes, Section 1536-683, provides that all powers and duties connected with and incident to the appointment, regulation and government of the police and fire departments of the city, shall be vested in the mayor and the board of public safety, as thereinafter provided, and that the mayor shall be the chief conservator of the peace within the limits of the corporation. Section 148, Revised Statutes, Section 1536-684, provides that the chief of police shall be the executive head of the department, under the direction of the mayor, provided, that the chief shall have exclusive control of the' stationing and transfer of all patrolmen and other officers and employes in the department, under such rules and regulations as may be prescribed by the board of public safety. Section 152, Revised Statutes, Section 1536-688, is as follows: “The chief of the police and the chief of the fire department shall have exclusive right to. suspend any of the deputies, officers or employes in his respective department and under his management and control, for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given him by the proper authority, or for any other reasonable and just cause.
*549 “If any such employe be suspended as herein provided, the said chief of police or the chief of the fire department, as the case may be, shall forthwith in writing, certify such fact, together with the cause of such suspension, to the mayor, who shall within five days from the receipt of the same, proceed to inquire into the cause of such suspension and render his judgment thereon and his judgment in the matter shall be final, except as otherwise provided in this act.
“The mayor' shall have the exclusive right to suspend the chief of the police department or the chief of the fire department for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given him by the proper authority, or for any other reasonable or just cause. In the event that either the said .chief of police or chief of the fire department shall be suspended as herein provided it shall be the duty of the mayor to forthwith certify such fact, together with the cause of such suspension, to the board of public safety, which shall within five days from and after the date of the receipt of such notice proceed to hear said charges and render its judgment thereon, which shall be final.” Section 186, Revised Statutes, Section 1536-722, is as follows: “Any person in the department of public safety in any city who shall be removed from his position of employment or appointment by the mayor, shall have the right to appeal from the decision of such officer, to the board of public safety within ten days from and after the date of his removal, arid said board of public safety shall hear said appeal within ten days from and after *550 the filing of the same with it, and its judgment in the matter shall be final.” Section 167, Revised Statutes, Section 1536-703, is as follows:' “No officer or employe in the department of public safety shall be removed or discharged except for cause; and the cause of removal of any person shall be forthwith stated in writing by the mayor to the board, and shall be filed by the said board in its office, and shall be open to public inspection.”
Prior to the adoption of the new municipal code, the mayor had power to suspend policemen or any officer appointed by him, but the power of removal was vested in the city council (Revised Statutes. Section 1749). Under the new code the powers of council are legislative only, and this section, giving the mayor power of suspension and the council power of removal, was repealed. However, Section 1747, Revised Statutes (now Section 1536-638) provided: “He shall supervise the conduct of all the officers of the corporation, inquire into and examine the grounds of all reasonable complaints against any of them, and cause all their violations or neglect of duty to be promptly punished or reported to the proper authority for correction,” and that section is expressly continued in force, and it is said that this section confers the power of removal upon the mayor. That it did not give him such power prior to the adoption of the new code is expressly decided in The State v. Heinmiller, 38 Ohip St., 101, and The State, ex rel., v. Bryson, 44 . Ohio St., 469; and the incorporation of it into, or the express continuance of it in force by, the new municipal *551 code, does not add to its scope, but, on the contrary, the legal presumption is that it was intended to be limited to the interpretation that had been given it. The evident purpose of the legislature respecting the police and fire departments, as indicated by the provisions relating to them in' the new municipal code, was to adopt a civil service or merit system. The chief of police- is made the executive head of the department under the direction of the mayor. He is given the exclusive right to suspend any of the deputies, officers or employes under his management or control, and in case of suspension, he is required to certify such fact, together with the cause of such suspension, to the mayor, who then finally determines the matter, excepting that an appeal may be taken to the board of public safety in case the judgment of the mayor is one of removal. The mayor is given the exclusive right to suspend the chief of the police department, and in the event he suspends the chief it .is his duty to certify such fact, together with the cause of suspension, to the board of public safety and it is given final jurisdiction. And it is made the duty of the mayor to prefer charges with council against any director of public safety for incompetency, neglect of duty, malfeasance in office, habitual drunkenness, or gross immorality, and it is made the duty of council to inquire into the - charges, in the manner provided for the removal of other officers of the municipality. Evidently it was thought that it would be conducive to the discipline or efficiency of the department, respecting the members of the *552 police force, if the exclusive power of suspension should be vested in the chief of police, and if the mayor should not have original jurisdiction to remove members of the force, but only in the event of charges being certified to him by the chief. If the chief fails in his duty the exclusive power of suspending him is vested in the mayor, and he may suspend him and certify the fact to the board, so that the board of public safety does not deal directly' with the members of the force or with the chief of the police, but exercises its control through the mayor, and the mayor does not deal directly or immediately with the members of the force but with the chief of police, and the chief is given immediate control of the men. This method seems to have been evolved from experience. But the wisdom of it, or effectiveness of it, is not a matter for our consideration. We have only to determine what the legislature in its wisdom has prescribed.
The fact that subsequently to the commencement of this action the city council repealed the ordinance creating the office'that was filled by the relator, and that it enacted another ordinance providing for a police force, and that an appointment has been made to the office created by the new ordinance, is not important, for the reason that the office that was filled by the relator was not abolished. The new ordinance by which the old ordinance was repealed did not make any change respecting the office held by the relator. And in such case, the new ordinance should be construed merely as continuing in force the provisions of the repealed ordinance that were incor *553 porated into the new ordinance. Bear Lake, etc., Irrigation Co. et al. v. Garland, 164 U. S., 1; Wright v. Oakley, 5 Met., 400. The restoration of relator to his office and the ousting of the person who was appointed to succeed him does not present a case of determining title to an office, because his removal having been absolutely void the pretended appointment is a mere nullity. The State, ex rel. Mason, v. The Mayor, etc., of Paterson, 35 N. J. L., 190.
The mayor being without jurisdiction there is no controversy as to the relevant and controlling facts, and proceeding to render the judgment that the circuit court should have rendered, it is ordered that a peremptory writ of mandamus as prayed for issue against the respondent as mayor.

Peremptory writ allowed.

Price, Spear and Davis, JJ., concur.